MARGARET SULLIVAN ET AL., APPELLANTS, V. FRANK P. CONRAD ET AL., APPELLEES.

FILED JUNE 7, 1907.  No. 14,863.

1. **Appeal: EVIDENCE.** Rulings of the trial court in excluding certain evidence offered examined, and *held* prejudicial error.

2. ———: **INSTRUCTIONS.** Instructions that withdraw from the consideration of the jury any material issue in the case, properly pleaded and supported by competent testimony, are erroneous. Instructions No. 6 and No. 8 examined, and *held* to withdraw a material issue from the consideration of the jury.

3. **Intoxicating Liquors: DAMAGES: EVIDENCE.** Under the civil damages section of our liquor law (Ann. St., sec. 7165), under ordinary circumstances a saloon-keeper is not liable for damages resulting from the use of intoxicating liquors, where the liquors were sold by the saloon-keeper to a third person, who thereafter furnished the liquor to the person who became intoxicated and caused the injury complained of, if it appears that the saloon-keeper had no knowledge or reason to believe that the liquors sold to the third person were to be furnished to the person who became intoxicated.

APPEAL from the district court for Jefferson county: WILLIAM H. KELLIGAR, JUDGE. *Reversed.*

*W. J. Moss,* for appellants.

*Heasty & Barnes, contra.*

GOOD, C.

Margaret Sullivan, on behalf of herself and five minor children, brought suit in the district court for Jefferson county against Frank P. Conrad and Fred F. Borland, two licensed saloon-keepers in the city of Fairbury, and joined with them their respective sureties on their liquor license bonds, to recover for damages to their means of support which, she alleged, was caused by the two principal defendants selling intoxicating liquors to John Sullivan, the husband and father of the plaintiffs. In her petition she alleged that both of said saloon-keepers sold and furnished to said John Sullivan intoxicating liquors

from the 3d day of May, 1904, until the 23d day of February, 1905; that, by reason of the use of the intoxicating liquors so sold and furnished, John Sullivan became a drunkard and was incapacitated to support the plaintiffs; that on the 23d day of February, 1905, while intoxicated from liquors furnished by the principal defendants, he resisted arrest by the city marshal of the city of Fairbury, and, while resisting said officer, was struck by him, and, by reason of the blow and of his intoxication, he fell upon the pavement and received injuries from which he died a few hours later. The jury returned a verdict in favor of the plaintiffs as against defendant Frank P. Conrad and his bondsmen in the sum of $450, but found in favor of defendant Borland and his bondsmen. Plaintiffs moved for a new trial, which was denied, and now bring the action to this court for review.

Complaint is made of certain rulings of the trial court in the exclusion of evidence, and in the giving and refusing of instructions. Plaintiffs offered direct evidence tending to show that the defendant Borland, during the period complained of, had sold and furnished liquors to John Sullivan. Among other things, Margaret Sullivan testified that her husband frequently brought home bottles or flasks of whiskey, which he drank, and one particular bottle, bearing the label, "Whiskey. Sold by Fred F. Borland, Fairbury, Neb.," was offered in evidence when she testified that she had seen her husband bring this particular bottle home and drink the liquor therefrom. The court excluded this offer from the consideration of the jury. The defendant Borland and his bartenders testified, denying that they sold any liquors to John Sullivan during the time complained of. In view of the conflict between the testimony of the plaintiffs and the defendants as to whether defendant Borland had sold any liquors to John Sullivan during the period named, we think that any fact or circumstance which would have a tendency to corroborate the testimony of either side was properly admissible. While there was no testimony that anyone saw

Sullivan buy or procure this particular bottle of liquor from Borland, yet the fact that Sullivan brought home a bottle of liquor which bore the printed label of defendant Borland was a circumstance which tended in some de gree to support and corroborate the evidence offered by plaintiffs, and, while it was not conclusive that the liquor in the bottle was furnished by Borland to Sullivan, it was a circumstance which was proper to go to the jury for its consideration in determining the question as to whether or not Borland had furnished any of the liquors which contributed to the cause of the alleged loss of support. We are of opinion that this ruling of the court was error, and, as the jury found entirely in favor of Borland and his sureties, the ruling was prejudicial to the plaintiffs.

Two instructions of the court are particularly com plained of. The first one is as follows: "No. 6. In order to return a verdict in favor of plaintiffs for loss of sup port caused by the death of Sullivan, you must be satis fied by a preponderance of the evidence, not only that Sul livan was intoxicated and that liquors furnished by Con rad and Borland contributed to produce such intoxication, but, further, that his intoxication was a contributing cause to his death. Unless you are convinced that Sul livan's intoxication contributed to produce the injury which resulted in his death, there can be no recovery in this suit." By the latter part of this instruction the court excluded from the consideration of the jury any loss or injury sustained by the plaintiffs to their means of sup port prior to the death of Sullivan. It must be borne in mind that the plaintiffs sue to recover for damages to their means of support from the 3d day of May, 1904, thenceforward, and that they complain of the injury to their means of support prior to, as well as after, the death of the husband and father. The means of support might be only partially impaired prior to his death and wholly lost thereafter, but the fact that the means of support was wholly cut off did not preclude the plaintiffs from

recovery for any injury sustained prior thereto which the evidence would show them to have sustained. The defendants contend that there is no evidence in the record that would warrant any finding of any loss of support prior to the death of Sullivan. It becomes necessary, therefore, to determine whether or not there is sufficient evidence offered to entitle this question to be submitted to the jury. We have examined the evidence with considerable care, and, while the evidence is neither clear nor satisfactory as to any loss of support prior to the death of Sullivan, yet there was evidence that Sullivan spent part of his earnings in the saloons, that he drank to excess and on a few occasions was drunk, and that he did not attend to his work and duties as well as he did before he became addicted to the excessive use of intoxicants. We are of opinion, on the whole, that the evidence was sufficient to warrant the court in submitting to the jury for its determination the question of the injury to plaintiffs' means of support occurring previous to the death of Sullivan. By the instruction referred to the court withdrew this question from the consideration of the jury. We think, under the circumstances, this instruction should not have been given, and that it was prejudicial to the plaintiffs.

That part of instruction No. 8 complained of is in the following language: "If Conrad or Borland did not furnish to Sullivan any of the liquor which contributed to produce the intoxication that resulted in his death, then you cannot return a verdict against them or their bondsmen, and you must be satisfied by a preponderance of the evidence that either Conrad or Borland furnished to Sullivan liquors which contributed to such intoxication, or you must find for the defendants, and your verdict can in no event be against either one of the principal defendants and their respective bondsmen, unless you are convinced by a preponderance of the evidence that he sold or furnished Sullivan intoxicating liquors which contributed to the intoxication which in whole or in part caused his death." This instruction contains the same vice as in-

struction No. 6, except that it enlarges and amplifies the same view, which was improperly given the jury in No. 6. The same observations that apply to No. 6 apply also to No. 8.

Complaint is also made of instruction No. 5, which is in the following language: "You are instructed that the fact that the witness Joe Burke purchased a pint of whiskey at defendant Conrad's place of business on the day of the accident, which he subsequently gave to Sullivan, can have no bearing upon Conrad's liability in this suit, except on the issue of Sullivan's intoxication at the time of his death, for the reason that Mr. Conrad had no notice or knowledge that Burke intended that Sullivan was to have any part of such liquor. Evidence that Burke did give the liquor purchased to Sullivan was admitted for your consideration only for the reason that it tended to show Sullivan's intoxication at the time he was killed." The evidence discloses that on the afternoon preceding the death of Sullivan he drank a single glass of whiskey at the bar of defendant Conrad. It further shows that the witness Joe Burke the same afternoon purchased a pint of whiskey from defendant Conrad, and that Burke gave a part of this whiskey to Sullivan, which Sullivan drank, and that the whiskey so furnished Sullivan by Burke contributed to his intoxication which caused his death. The court permitted the evidence to go to the jury for the purpose of showing Sullivan's intoxication at the time he received the injury that caused his death, and, by the instruction, informed the jury that this could have no bearing upon Conrad's liability in the suit, in the absence of any evidence that Conrad had notice or knowledge that the liquor bought by Burke was intended for Sullivan. This presents a phase of our liquor law that, so far as we are aware, has not been determined by this court; that is, whether or not a saloonkeeper is liable to one who uses intoxicating liquors and by reason of such intoxication is injured, when the injured person did not obtain the intoxicating liquors from

the saloon-keeper, but from a person to whom the saloon-keeper had sold or furnished intoxicating liquors, without notice or knowledge that such liquors were to be given or furnished to the person who received the injury. Whether he is liable in such a case depends upon whether the injury can be said, under the circumstances, to grow out of the saloon-keeper's traffic in intoxicating liquors. In such case there is no traffic in intoxicating liquors between the saloon-keeper and the person who received the injury. The traffic in such case is limited to the person who purchased the liquor. To hold the saloon-keeper liable under such circumstances would deprive him of any benefit from the exercise of the most careful judgment in the sale of liquors. If he may be held liable where the sale or furnishing of the liquor is removed one step from the person who becomes intoxicated and injured, either in time or person, then we are at a loss to know where the line might be drawn. If he may be held liable in such case, we see no reason why he should not be held liable if he should sell to A, who might a month or a year thereafter give the liquor to B, who from its use might become intoxicated and injured. Or, to go further, he might exercise the utmost caution and good judgment in selling to A, who might thereafter give the liquor to B, and B furnish it to C, and so on through a half a dozen persons, until the liquor originally sold to A, might a year thereafter be given by some third or fourth person to an habitual drunkard, who would become intoxicated and suffer an injury, which would impair the means of support of the wife and family of the habitual drunkard, to whom the saloon-keeper under no circumstances would have sold or furnished any liquor. We do not think such a construction of our liquor law is warranted, nor do we think that injuries under such circumstances were contemplated by the framers of the civil damage section of our liquor statute. We have not been cited to any authorities in point by counsel for either side, but we find support given to this view in Black, Intoxicating Liquors,

sec. 294, from which we quote the following: "As a rule, the liability under the civil damage laws is confined to the person who directly caused the intoxication complained of, by furnishing liquor to the inebriate. If the same liquor has passed through several hands, this does not establish a joint or successive liability on the part of all those who have sold it. Thus, if A sells liquor to B, and B sells it to C, and C thereby becomes intoxicated and injures D, the latter has a right of action against B, but not against A." The rule might be different, however, if the first vendor knew, or had good reason to believe, when he sold the liquor, that the purchaser intended to furnish it to a third person, if such third person thereafter became intoxicated and thereby caused damage to himself or another.

There are other errors complained of; but, since this cause must be reversed for the reasons heretofore given, and the other errors complained of do not appear likely to arise upon a new trial, we refrain from considering them.

For the reasons given, we recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.